UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHANIE M. KOCH,

         Plaintiff,

                  **Hon. Hugh B. Scott**

      v.             12CV238A

                  **Report
and
Recommendation**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security[1],

         Defendant.

   Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 13 (plaintiff), 11 (defendant Commissioner)).

## INTRODUCTION

   This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits from June 26, 2008, to September 30, 2010, the date plaintiff's insured status expired (see Docket No. 12, Def. Memo. at 2).

---

   [1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for now former Commissioner Michael J. Astrue as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

Plaintiff, Stephanie M. Koch ("Koch" or "plaintiff"), filed an application for disability insurance benefits on January 14, 2009. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated October 4, 2010, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on January 27, 2012, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on March 23, 2012 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 13, 11), and were submitted on April 8, 2013 (see Docket No. 16).

## FACTUAL BACKGROUND[2]

Plaintiff was born in 1980 and had a high school education, hence a younger individual 18-44 years of age on the date she was last insured (R. 14). Plaintiff had past relevant work as a cashier, day care worker, and sales clerk (id.), last working as a cashier (R. 34). Plaintiff testified before the ALJ that she last worked on or about December 2004 and was not working due to pain in her lower back (R. 23-24). Plaintiff lives with her husband and two young children (ages three and five as of 2010) (R. 30, 35).

---

[2] References noted as "(R.___)" are to the certified record of the administrative proceedings.

**MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff claims an onset date of June 26, 2008, and claimed disability due to having scoliosis[3], kyphosis[4], status post cervical fusion, and facet arthritis. She testified that her biggest problem was back pain and lower hip pain (R. 13). She had scoliosis surgery when she was 14-15 years old (cf. R. 24, 36 (testified surgery when she was 15 or 16)). Plaintiff was diagnosed at age 21 with arthritis in her lower back following the scoliosis surgery (R. 24). Plaintiff is taking Hydrocodone and Naproxen as pain medication, muscle relaxants (R. 25, 27). She was prescribed an injection at the site of her pain but she had a panic attack and could not have the injection administered and at the time of her hearing plaintiff had an appointment to have the injection with a sedative (R. 25). Plaintiff complains of headaches, some severe (at a level of 6 or 7 on a 1 to 10 pain threshold scale) on a monthly basis and other headaches with lesser severity (at a pain level of 2 or 3) that occur two to three times a month (R. 26). Plaintiff has tried massage, walking around, and lying down to alleviate her back pain (R. 28). On a good day, plaintiff could stand and walk for an hour (R. 29) and could lift up to 10 pounds (R. 29-30). Plaintiff leaves heavier lifting to her husband, who assists with moving laundry and groceries (R. 30-32), as well as house cleaning tasks that require bending (R. 30).

The ALJ asked what work plaintiff could then perform and she said that she could work if allowed to walk for 15 to 20 minutes until the back pain subsides (R. 32-33).

---

[3]Scoliosis is a sideways curvature of the spine that occurs most often during the growth spurt just before puberty, http://www.mayoclinic.com/health/scioliosis/DS00194 (last visited Apr. 9, 2013).

[4]Kyphosis is an exaggerated forward rounding of the upper body, also known as hunchback or round back, http://www.mayoclinic.com/health/kyphosis/DS00681 (last visited Apr. 9, 2013).

At home, plaintiff cares for her children (R. 30, 125, 134), drives, walks (R. 127, 145), cooks, cleans (including washing the floor with a Swiffer sweeping tool) (R. 13, 30, 32, 34, 126, 128, 144, 146).

The ALJ found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of these symptoms the ALJ found were not credible, since she did not use pain medication as frequently as expected for the alleged level of pain (R. 14). Mild or moderate pain or discomfort "is not, in itself, incompatible with the performance of sustained work activity" (id.).

Plaintiff argues that the ALJ erred in finding that her residual functional capacity was to perform sedentary work without having medical evidence to support that finding or with a function-by-function finding (Docket No. 13, Pl. Memo. at 8-13), later concluding that this assessment was not supported by substantial evidence (Docket No. 14, Pl. Response at 1-4). She objects to the ALJ making this finding without consulting a vocational expert (Docket No. 13, Pl. Memo. at 13-15) or asking any physician for an opinion (Docket No. 14, Pl. Response at 3). Plaintiff next argues that the ALJ did not apply the appropriate legal standard for evaluating her credibility as to the intensity, persistence, and limiting effects of her symptoms (Docket No. 13, Pl. Memo. at 15-17).

The Commissioner replies that there is sufficient evidence to support the ALJ's findings, including medical evidence in the record to support the residual functional capacity finding (Docket No. 17, Comm'r Reply Memo. at 2-3, 3-5). The ALJ considered the Medical-Vocational Guidelines rather than obtain the testimony of a vocational expert (id. at 7-8).

4

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which

5

the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>  (1) whether the plaintiff is currently working;
>
>  (2) whether the plaintiff suffers from a severe impairment;
>
>  (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>  (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and
>
>  (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In considering symptoms, the ALJ had to follow a two-step process, first determine whether there is an underlying medically determinable physical or mental impairment. Second, once an impairment could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. (R. 13.)

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

Claimant has the burden of proving that her residual functional capacity was more limited than found by the ALJ, Poupore v. Astrue, 566 F.3d 303, 305-06 (2d Cir. 2009) (Docket No. 17, Def. Reply Memo. at 2).

*Application*

In the instant case, the issues surround the ALJ's finding at step 3 that plaintiff's degree of pain and discomfort did not limit her functioning to perform sedentary jobs for a roughly two-year period of June 2008 to September 2010. First, plaintiff argues that the ALJ did not consider medical evidence in concluding a residual functional capacity (Docket No. 13, Pl. Memo. at 8-11). But, as pointed out by defendant Commissioner, the ALJ had the assessment of the consultative examiner, Dr. Kathleen Kelley, who addressed the limitations plaintiff faced with her back condition (Docket No. 17, Def. Reply Memo. at 2-3; R. 235-39). Dr. Kelley examined plaintiff and opined that plaintiff would have marked limitations in bending or twisting repetitively of her lumbar spine, heavy lifting, pushing or pulling, but Dr. Kelley noted "no other obvious limitations" from that examination (R. 238). Neurological examinations of plaintiff's back have been normal, with plaintiff receiving relief from medication and massage, having a normal gait and strength (R. 278, 282, 236-37; Docket No. 12, Def. Memo. at 19). In an

7

April 2010, examination, plaintiff was found to have eighty percent improvement in her back symptoms and full, pain-free range of motion in her hips (R. 278). In July of that year, plaintiff reported that she felt well and exercised daily (R. 281; Docket No. 12, Def. Memo. at 19).

As for plaintiff's headaches and migraines, they were treated with medication (Docket No. 12, Def. Memo. at 18). Defendant Commissioner argues that plaintiff's daily activities are inconsistent with her claims of disability (id. at 19-20), but plaintiff's home activities do show some limitation (for example, having her husband engage in heavier lifting and cleaning that involves bending, R. 29-30). But even with these limitations, plaintiff showed in her activities that she could perform sedentary work, see Poupore, supra, 566 F.3d at 307, and from her statement describing the work she could perform (work that allowed her a period to walk to ease her pain, R. 32-33) being sedentary work.

Next, plaintiff contends that the ALJ erred in not breaking down the sedentary work residual functional capacity finding by a function-by-function analysis (Docket No. 13, Pl. Memo. at 11-13). As she notes (id. at 12-13), district courts in this Circuit are divided whether such an analysis is required by the ALJ before determining residual functional capacity. But the Second Circuit recently held that such an analysis is unnecessary, Campbell v. Astrue, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order), substantial evidence supports the ALJ's overall residual functional capacity determination without analyzing each particular function, id.; see also Murphy v. Astrue, No. 12CV6271, 2013 U.S. Dist. LEXIS 51088, at *16-18 (W.D.N.Y. Apr. 9, 2013) (Telesca, J.); Lloyd v. Astrue, No. 12CV122, 2013 U.S. Dist. LEXIS 25794, at *10 (W.D.N.Y. Feb. 23, 2013) (Skretny, Ch.J.) (failure of ALJ to conduct function-by-function assessment is not ipso facto ground for remand). Similarly, plaintiff's objection that the ALJ did

not seek the opinion of a vocational expert also fails since the ALJ properly found that plaintiff failed to establish step 3 that her impairments met or were medically equal to listed impairments. A vocational expert is sought at step 5 to determine if, given a claimant's impairment, there was other work that the claimant (or a hypothetical claimant with similar impairment) could perform in the national economy (see R. 11-12). The one medically identified limitation, by Dr. Kelley, of repetitive bending or twisting plaintiff's spine (R. 237-38) would not occur in sedentary occupations (Docket No. 17, Def. Reply Memo. at 7-8). An expert is not necessary to determine what occupations plaintiff could perform with bending or twisting limitations. Finally, the ALJ applied the proper legal standard in making credibility findings.

Thus, plaintiff fails to establish that her condition was more limited that the residual functional capacity finding of the ALJ.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**. Defendant's motion for judgment on the pleadings (Docket No. 11) should be **GRANTED** and plaintiff's motion for similar relief in her favor (Docket No. 13) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 19, 2013